## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL W. T., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **Case No. 22-CV-560-CDL** |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

### I.     Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1]     On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Background and Procedural History

The plaintiff filed a Title II application and protectively filed a Title XVI application for disability benefits on September 2, 2020, alleging a disability onset date of July 27, 2017. (R. 16). The plaintiff alleged disability due to a combination of impairments, identified in agency records as "Bipolar I Disorder, mix, severe, with psychotic features;

Amphetamine Type Substance abuse Disorder; Unspecified personality disorder; generalized anxiety disorder; need neck surgery; [and] back issues." (R. 145). He was 39 years old on the alleged onset date. *Id*.

During the time since his alleged onset date, the plaintiff lived with his mother until her death in April 2020. Several months later, he began living in a shelter. The plaintiff dropped out of school before completing high school. (R. 59). He has never been married and has no children.

During the administrative appeal process, he was living in the Lighthouse shelter and working there as an assistant cook. (R. 60). He works part-time, but sometimes works "up to" 40 hours per week, although this work does not constitute substantial gainful activity within the meaning of the Act. (*Id*.; *see* R. 19). Previously, he worked as a home health aide, receiving pay for taking care of his mother during her illness. (R. 60).

The plaintiff's application was denied on initial review and on reconsideration. An Administrative Law Judge (ALJ) held a hearing via videoconference on May 19, 2022. (R. 54-86). The plaintiff and a vocational expert (VE) provided testimony. *See id*. The ALJ denied benefits in a decision dated July 5, 2022. (R. 16-53). The Appeals Council issued a decision on October 25, 2022 denying the plaintiff's request for review of the ALJ's decision. (R. 1-6). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's July 5, 2022 decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined the plaintiff's work at the Lighthouse shelter did not meet the level of substantial gainful activity. (R. 19). Accordingly, the ALJ proceeded to step two.

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that the plaintiff has severe impairments of lumbar spine degenerative disc disease, bipolar disorder, generalized anxiety disorder, unspecified personality disorder, other specific personality disorder, adjustment disorder, and PTSD. (R. 19). The ALJ found the plaintiff has additional, non-severe impairments, including

> obesity, essential hypertension, type II diabetes mellitus, status post right arm fracture and surgery with present deformity, mild cervical spine degenerative disc disease, right carpal tunnel syndrome (status post release), right plantar fasciitis and right heel spur (status post plantar fascial release and heel spur resection), urinary frequency, reflux esophagitis/GERD, mild diverticulosis, diverticulitis, nonbleeding internal hemorrhoids, chronic pancreatitis, moderate hepatic steatosis, diarrhea, anemia, vitamin D deficiency, migraine headaches, asthma, mild COPD, obstructive sleep apnea, nicotine

4

> dependence, seasonal allergies, blurred vision, insomnia, and polysubstance use disorder (including methamphetamine) in remission.

*Id.*

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that the plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.00 (musculoskeletal system) and 12.00 (mental disorders). The ALJ also discussed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *See* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that the plaintiff has a moderate limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. (R. 19-24). Because the plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. (R. 26).

At step four, the claimant must show that his impairment or combination of impairments prevents him from performing work he has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant

5

medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023. Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that the plaintiff has the RFC to perform

> "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and no walking on uneven surfaces. He is also limited to unskilled work, which is simple, repetitive, and routine. His supervision must be simple, clear, and concise. He may have occasional interpersonal contact with supervisors and coworkers. He cannot perform work requiring a specific production rate, such as assembly line work or work requiring hourly quotas. He will need regular work breaks every two hours, as normally allowed in competitive work. He should have only occasional, well-explained workplace changes. He should have no contact with the general public.

(R. 26-27). The ALJ found that the plaintiff does not have any past relevant work. (R. 44). However, citing the VE's testimony, the ALJ found that the plaintiff can perform alternative jobs existing in significant numbers in the national economy, including (1) **hand packager**, Dictionary of Occupational Titles (DOT) # 559.687-074, light exertion, unskilled work, specific vocational preparation (SVP) Level 2, with approximately 336,000 such jobs available in the national economy; (2) **housekeeping cleaner**, DOT # 323.687-014, light exertion, unskilled work, SVP Level 2, with approximately 917,000 such jobs available in the national economy; and (3) **conveyor line bakery worker**, DOT # 524.687-022, light exertion, unskilled work, SVP Level 2, with approximately 165,000

such jobs available in the national economy. *Id*. As such, the ALJ found the plaintiff not disabled at step five. (R. 36).

## IV.   Discussion

The plaintiff argues that the ALJ's decision failed to adequately support the physical and mental RFC determination with specific evidence in the record. He contends that his physical impairments limited his ability to walk and his mental impairments limit his ability to work on a continuing and ongoing basis. The plaintiff also alleges the ALJ committed legal error at step five by failing to reconcile a conflict between the mental RFC and the jobs identified by the VE. The Commissioner responds that the ALJ properly considered the combined effects of plaintiff's impairments and the ALJ's decision is legally sound and supported by substantial evidence.

The ALJ's written decision "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).[2] The ALJ must support the limitations included in the RFC determination with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.*

---

[2]     A claimant's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis," despite his medical impairments and symptoms. *Id*. at *2 (emphases in original).

A.      **Physical RFC**

Although confusingly organized, the plaintiff's brief argues that the ALJ failed to adequately address certain evidence regarding his severe lumbar degenerative disc disease and other physical impairments. The plaintiff asserts that his physical impairments leave him unable to perform the standing and/or walking required of light work and/or to perform work on a regular and continuing basis, as set forth in SSR 96-8p. Specifically, he points to the medical source statement of his podiatrist, Nicole Cupp, D.P.M., dated April 29, 2022, and the prior administrative findings of Herbert Meites, M.D., dated June 9, 2021.

The ALJ's decision must articulate how the ALJ considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1).[3] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2).[4]

Here, Dr. Cupp performed an endoscopic right plantar fascial release and right heel spur resection on February 25, 2022. (*See* R. 39). Afterward, the plaintiff used a knee scooter temporarily, but by the time of the ALJ hearing on May 19, 2022, plaintiff could

---

[3]     For claims filed on or after March 27, 2017, such as the plaintiff's claim here, the Commissioner does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

[4]     The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

walk, although he testified that he was still in pain. (R. 64). As discussed in the ALJ's

decision, Dr. Cupp's April 29, 2022 medical source statement indicates that the plaintiff

> is capable of lifting and/or carrying commensurate with the
> performance of "medium" work, but is limited to standing two hours
> at a time for a total of four hours in an eight-hour workday, and
> walking three hours at a time for a total of four hours in an eight-
> hour workday. Dr. Cupp further opined that the [plaintiff] can
> occasionally stoop and climb ramps and stairs, but can never
> balance, stoop, kneel, crouch, crawl, and climb ladders or scaffolds,
> and cannot walk a block at a reasonable pace on rough or uneven
> surfaces.

(R. 39).

The ALJ found Dr. Cupp's opinion unpersuasive. First, the ALJ found that the

opinion lacks support, as Dr. Cupp "merely listed[] 'plantar fasciitis' as supporting the

limitations she opined." *Id*. Further, the ALJ noted that Dr. Cupp's examination records

indicated that prior to surgery, plaintiff had intact sensation, equal and symmetric bilateral

deep tendon reflexes, and good range of motion in the lower extremities. (R. 39-40). For a

period of time after surgery, the plaintiff was instructed to avoid weight-bearing, but

otherwise records indicated that his wound was healing well and his neurovascular status

was intact. (R. 40). The ALJ thus adequately addressed the supportability factor.

The ALJ also found Dr. Cupp's opined limitations were not consistent with other

evidence in the record, citing the plaintiff's own statement that he stopped using his walker

in April 2022. *Id*. The ALJ explained that, apart from temporary periods when the plaintiff

used assistive devices around his lumbar surgeries, he was able to walk unassisted, and

medical records reflected that he rarely showed deficits in gait or "exhibit[ed] the abnormal

range of motion findings that would be consistent with the postural and other limitations Dr. Cupp opined." *Id*.

The ALJ's evaluation of Dr. Cupp's opinion is legally sound and supported by substantial evidence. *See* 20 C.F.R. § 404.1520c(b)(3). Plaintiff argues that prior to his plantar fasciitis surgery, the record shows multiple occasions when he used a walker, demonstrated an abnormal gait, sought pain management in connection with various physical impairments. However, the ALJ's decision specifically addressed this evidence, and explained how the ALJ considered it in light of the record as a whole. (*See* R. 39-40). For example, the ALJ's decision noted that a consultative examination one month prior to Plaintiff's July 2017 alleged onset date reflected that Plaintiff walked with a normal, steady, symmetric gait and exhibited normal range of motion. (R. 29, 844). With respect to his foot-related impairments, despite temporary periods when plaintiff experienced greater pain or limitations, such as during recovery after his surgery, "Dr. Cupp's records indicate no assistive device usage noted until after . . . surgery, and recorded no deficits in gait prior to surgery." (R. 40).

The ALJ acknowledged that a state agency reviewing consultant, Dr. Meites, on reconsideration found that the plaintiff could perform the full range of sedentary work. *Id*. The ALJ found this opinion unpersuasive, noting that another state agency consultant found plaintiff had no severe physical impairment at all. The ALJ acknowledged certain evidence that "arguably supported" Dr. Meites' sedentary rating—for example, plaintiff's complaints of pain in April 2021, when he was observed ambulating with a walker and displayed a slow and slightly antalgic gait on the right. *Id*. However, the ALJ noted that

10

despite "isolated abnormal examination findings," on most occasions the plaintiff had a normal range of motion, normal gait, and was in no acute distress. Furthermore, the ALJ acknowledged that plaintiff's records "substantiate exacerbated lumbar symptoms" beginning in 2020, but explained the record "do[es] not indicate that these exacerbated symptoms lasted at least 12 months." *Id*. As such, under applicable agency guidelines, the ALJ reasonably concluded that the period of exacerbated lumbar symptoms did not establish an "inability to engage in [substantial gainful activity] because of the impairment that . . . last[ed] the required 12-month period." SSR 82-52.[5]

As the Tenth Circuit has explained, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Rather, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id*. (internal citations and quotation marks omitted). Here, the ALJ's decision addressed the reliability and supportability of the medical opinions and prior administrative findings in the record, and substantial evidence supports the ALJ's conclusions. Nothing further was required. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

---

[5]     SSR 82-52, referenced in the plaintiff's opening brief, was rescinded and replaced on November 7, 2023 with SSR 23-1p. The agency began following SSR 23-1p "beginning on its applicable date," but the agency's ruling indicates that the prior ruling 82-52 still applies as to decisions made prior to its being rescinded. SSR 23-1p n. 5. Moreover, SSR 23-1p uses similar language in explaining that "[a]n individual's inability to perform [substantial gainful activity] because of the relevant [impairments] must also last the required 12-month period."

The plaintiff points to evidence that he claimed to have used a walker for six months in 2020, and that he was observed limping or using assistive devices and sought treatment for pain on several occasions in 2021 and early 2022. He argues that the record as a whole shows persistent problems standing and walking during that time period.

Contrary to plaintiff's suggestion, the ALJ did not ignore this evidence—rather, as set forth above, the ALJ acknowledged the plaintiff had periods of exacerbated lumbar symptoms. However, in discussing the medical opinions and administrative findings, the ALJ concluded that longitudinal medical records during the relevant period "belie [the plaintiff's] statements to [his neurosurgeon in December 2020] that he had been using a walker since circa June 2020." (R. 32). Despite "some abnormal findings related to his lumbar spine," the plaintiff had "no focal neurological deficit and normal sensory, motor, and coordination, and reported that his pain was well-controlled." (R. 32-33).[6]

Plaintiff argues that the ALJ failed to consider the combined impact of his impairments, including his nonsevere impairments of multi-joint arthritis, chronic pain syndrome, obesity, and diabetes. (See Pl. Br., Doc. 10 at 10). However, plaintiff fails to show that the ALJ ignored any significantly probative evidence relating to these conditions or their functional consequences. The focus of a disability determination is on the

---

[6]     The plaintiff's hearing testimony further supports the ALJ's assessment. When asked whether he can walk without a walker or cane, the plaintiff testified that, at the moment, he was "doing pretty good without it." (R. 62). He kept the walker nearby in case of a "bad day" with shooting pain, and had used it "for a few days" the month before the hearing. However, he "tr[ied] not to use it at all," and testified he was "doing pretty good. I started doing pain management and they've been helping me with it and everything." Id.

functional consequences of a condition, not the mere diagnosis. *See* 20 C.F.R. § 416.921 ("[The ALJ] will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment."); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); SSR 96-8p ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

Here, the ALJ's decision states that the ALJ considered any limitations arising from these non-severe impairments, and acknowledged evidence relating to his arthritis and weight. (*See* R. 30, 32, 37, 43). The ALJ also referenced plaintiff's allegations of and treatment for pain throughout the record in detail in explaining the RFC determination. (*See* R. 27-40). The plaintiff has failed to show any reversible error by the ALJ in addressing the evidence relating to his combined physical impairments.

### B.      Mental RFC

Plaintiff challenges the mental RFC determination, arguing that his bipolar disorder and other mental impairments render him unable to perform work on a regular and continuing basis. The plaintiff objects to the ALJ's treatment of the consultative psychological opinion of Melinda Shaver, Psy.D., who examined the plaintiff on December 19, 2020. Dr. Shaver reported that the plaintiff "appeared to be a reliable informant." (R. 1061). The plaintiff informed Dr. Shaver that he was applying for disability due to his back problems and difficulty walking. *Id*. As recounted in the ALJ's decision, the plaintiff told

13

Dr. Shaver that he "was cooking and helping in the kitchen at the Lighthouse homeless shelter, is able to manage his own finances, needs no help with self-care, and does some cooking and cleaning." (R. 41).

Dr. Shaver noted that plaintiff socializes with his brother and other people at the shelter and attends church. He appeared "able to complete some tasks in a timely and appropriate manner." (R. 1061-1062). During Dr. Shaver's examination, the plaintiff demonstrated appropriate behavior and coherent, relevant speech, and denied experiencing hallucinations. (R. 1062). His "sensorium appeared to be clear," and he was oriented to time, person, place, and purpose, although he demonstrated a poor fund of knowledge. *Id*. He was able to perform serial 7s from 100 and spell "world" forward and backward. Dr. Shaver estimated his intelligence as average. (R. 1063). She found his insight "fair" and his judgment to be "good." *Id*.

Dr. Shaver concluded her report by stating that plaintiff's "prognosis is fair. He is currently not receiving mental health treatment or taking medication. [The plaintiff] does not appear emotionally capable of employment." *Id*. She opined that the plaintiff can manage benefit payments in his own interest. (R. 1064).

The ALJ found Dr. Shaver's conclusion that the plaintiff is not capable of employment unpersuasive. The ALJ found this statement unsupported in Dr. Shaver's own examination, noting plaintiff's own report that he was cooking and helping in the kitchen at the Lighthouse shelter, managed his own finances, and did not need help with his self-care. (R. 41). The ALJ also noted that a reviewing consultant with the state agency made similar observations, concluding that plaintiff "evidenced within normal limits functioning

14

on mental status examination and reported ability to cook, clean, manage finances, socialize, maintain self-care, and also reported that he has a driver's license." (R. 42).

The ALJ also contrasted Dr. Shaver's conclusion with plaintiff's "contemporaneous statements to his own medical sources" throughout the record that he was able to manage his symptoms. (R. 41). Moreover, the ALJ found Dr. Shaver's opinion was inconsistent with the "preponderance of other mental status examination findings regarding attention and concentration" throughout the record. (R. 42).

Plaintiff points to portions of the record documenting episodes where his mental health symptoms became acute, and times when he sought treatment from ER or walk-in clinics. (*See* R. 1001 (in August 2016, plaintiff was referred for medication adjustment after he "beat the shit out of [his] door"); R. 1005 (in February 2020, he was "agitated" and described his behavior as "mean" after relapsing on methamphetamines); R. 1007-1009 (plaintiff reported having been arrested twice after "hit[ting] his mother a couple of times."); R. 1013 (in February 2020, plaintiff reported he had not taken his meds since June of 2019); R. 1033 (a February 19, 2020 report by a case manager indicating the plaintiff's mother had reported "she was afraid of [plaintiff] and she believes that if she is removed from the home [the plaintiff] may hurt her or himself."); R. 1035 (The following week, a case manager visited plaintiff's house and learned plaintiff's mother was "outside, in the misty rain, no shoes and no jacket" while the plaintiff was reportedly inside the house, "throwing objects including glass.")).

But the ALJ did not ignore or downplay this evidence; in fact, the ALJ's decision reasonably addressed the significantly probative evidence from the relevant time period,

noting that on three occasions plaintiff "exhibited agitated, hostile behavior . . . in connection with methamphetamine use," but noting evidence that at other times, he reported taking a class to learn to control his anger. (R. 22). Moreover, the ALJ noted that elsewhere in the record, the plaintiff "stated that he gets along fine with authority figures and has never lost a job due to difficulty getting along with others." (R. 23). The plaintiff also reported to Dr. Shaver in December 2020 that he "ha[d] been clean and sober from methamphetamine for about two-and-a-half years now." (R. 37).

The plaintiff argues that the ALJ ignored the fact that bipolar disorder is characterized by euthymic states, suggesting the ALJ placed too much weight on instances when he reported his mental symptoms were "not that bad." However, the ALJ's decision shows that he considered the impact of plaintiff's bipolar I disorder over time, but reasonably concluded that the overall record did not support Dr. Shaver's conclusion. (*See* R. 41) (noting plaintiff's "contemporaneous statements to his own medical sources . . . that he was doing okay without medications and managing symptoms, and that his mood was more stable" and his report in January 2021 "that his depression was currently 'not that bad,' and 'comes and goes.'").

The plaintiff has shown no error in the ALJ's mental RFC findings at step five. Rather, the plaintiff is asking the Court to re-weigh the evidence, which it may not properly do. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (citation and quotation omitted)); *see also Richardson v. Perales,* 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon

situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

### C.    Step Five

The plaintiff argues that the ALJ improperly failed to resolve a discrepancy between the mental RFC limitation to "simple, repetitive, and routine work" and the VE's testimony that a person with that RFC could perform jobs identified as reasoning level 2. However, the applicable case law does not support this argument. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that Level 2 reasoning "appears more consistent with" an RFC for "simple and routine" work tasks); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (rejecting argument that limitation to "simple and routine work tasks" is inconsistent with Level 2 reasoning); *see also Ray v. Comm'r of Soc. Sec.*, No. CIV-18-629-SM, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3, 2019) (unpublished) (finding that Level 2 reasoning does not, "on its face," conflict with an RFC limited to simple work-related instructions and tasks; collecting cases); *compare Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (citing Eighth Circuit holding that "a limitation to simple instructions is inconsistent with both level-two and level-three reasoning," but noting that Tenth Circuit has not ruled "whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions"). Under the existing case law, there was no apparent conflict between the DOT and the VE's testimony identifying jobs with GED Level 2 reasoning, and therefore the ALJ did not commit reversible error in accepting the VE's testimony.

The plaintiff notes that the ALJ apparently relied on the prior administrative findings of William Farrell, Ph.D., that the plaintiff could understand, recall, and perform simple, repetitive tasks. (*See* R. 42). He argues that Dr. Farrell's findings are not consistent with the performance of level 2 reasoning jobs, because in his paragraph B findings, Dr. Farrell found plaintiff 'markedly' limited in understanding, remembering, and carrying out detailed instructions. (R. 190-191). The plaintiff argues this finding conflicts with the requirements of one of the alternative jobs the ALJ identified at step five, inspector and hand packager, which would require a worker to follow detailed instructions.

Even assuming plaintiff were correct, and the hand packager job were eliminated, the remaining jobs identified at step five number close to one million, which is a sufficient number such that, under Tenth Circuit precedent, no reasonable administrative factfinder" could have concluded that an insufficient number of alternative jobs exist consistent with plaintiff's vocational profile and RFC. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). As such, any such error would not warrant remand, since there is no reason to believe remand would result in a different outcome.[7]

Moreover, the ALJ here did not impose any RFC limitations that on their face conflict with reasoning level 2. While the ALJ found Dr. Farrell's assessment "more

---

[7]     For the same reason, the Court rejects the plaintiff's suggestion that the bakery worker job should have been eliminated based on the RFC restriction on work requiring a specific production rate. Moreover, no apparent conflict existed, because while the DOT indicates the job may involve using a conveyor line to inspect, add decorating details, or monitor machine application of ingredients to a cake, it does not indicate the work must be performed according to a specified pace or quota. *See* DOT 524.687-022.

persuasive" than the initial reviewer's findings, the ALJ did not adopt Dr. Farrell's mental RFC wholesale—nor was the ALJ required to do so. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Further, in explaining the mental RFC determination, the ALJ noted that the plaintiff admitted "that he is cognitively independent for meals, chores, following instructions, and interacting with others." (R. 42-43). Still, acknowledging that the plaintiff experiences symptoms of depression and anxiety, the ALJ "agree[d] that he is limited to unskilled work, which is simple, repetitive, and routine, and simple, clear, concise supervision," and imposed additional limitations on performing "work requiring a specific production rate, such as assembly line work or work requiring hourly quotas." (R. 43). Thus, the ALJ's decision shows that he made his own assessment of the mental RFC in light of the record as a whole, and his RFC findings do not conflict with the alternative jobs identified at step five.

## V.      Conclusion

For the reasons set forth above, the Court finds the ALJ's conclusion is legally sound and supported by substantial evidence. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the relevant period is **affirmed**.

ORDERED this 26th day of March, 2024.

Christine D. Little
United States Magistrate Judge